UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JOSE VELASQUEZ,

       Plaintiff,         19-cv-9687 (PKC)

  -against-             OPINION
                      AND ORDER
CITY OF NEW YORK DEPARTMENT OF
BUILDINGS AND MELANIE LA ROCCA,
COMMISSIONER,

       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    Plaintiff Jose Velasquez alleges that he was discriminated against based upon his race by the New York City Department of Buildings ("NYC DOB") and Melanie La Rocca, its Commissioner, in connection with the expiration of a special New York City license for certain types of construction-site inspections, the non-renewal of that license, and related administrative proceedings disciplining him for acting without the required license. Velasquez seeks damages, renewal of the relevant license, an injunction prohibiting future discrimination against him, and a declaration that the regulations governing the relevant license are unconstitutional. Defendants move to dismiss the Complaint ("Compl."), (Doc. 4), for failure to state a claim. Rule 12(b)(6), Fed. R. Civ. P. For the reasons that follow, the Court will grant defendants' motion to dismiss.

BACKGROUND

    Velasquez describes himself as "an African-Honduran engineer," who lives and works in New York City. (Compl. ¶ 4). He holds B.S. and M.S. degrees in engineering and a New York State professional engineer's license. (Compl. ¶ 4). This action does not relate to Velasquez's status as a licensed professional engineer, but instead concerns a separate special license issued by the City of New York. In 2014, the NYC DOB established the Special Inspector

Agency ("SIA") license, which permits a holder to monitor and conduct special inspections of construction sites in New York City. (Compl. ¶¶ 10, 12). On February 11, 2014, Velasquez applied for and was subsequently issued a SIA license. (Compl. ¶ 4); (Ex. D to Decl. of Karen B. Selvin (Doc. 16-4)).

A SIA license is valid for three years and thereafter must be renewed for another three-year period. 1 R.C.N.Y. § 101-06(c)(8). In 2017, Velasquez was required to renew his SIA license. (Compl. ¶ 13). The NYC DOB did not send notices to SIA license holders to remind them of their need to renew. (Compl. ¶ 13). Without such a reminder, Velasquez did not renew his SIA license, which resulted in its expiration. (Compl. ¶ 13). Had Velasquez submitted his renewal request on time, the renewal of his license "would have been routine and automatic." (Compl. ¶ 13).

On May 31, 2018, NYC DOB wrote to Velasquez advising him that his SIA license had expired over a year previously and that he would need to apply for a new SIA license. (Compl. ¶ 15); (Ex. E to Decl. of Karen B. Selvin (Doc. 16-5)). On November 4, 2018, Velasquez reapplied for a SIA license. (Compl. ¶ 15); (Ex. F to Decl. of Karen B. Selvin (Doc. 16-6)). On February 19, 2019, NYC DOB wrote to Velasquez stating that it had reviewed his SIA application and, during its investigation, discovered that from May 20, 2017 to December 31, 2018 Velasquez had filed 42 special inspection forms without holding a valid SIA license. (Compl. ¶ 15); (Ex. H to Decl. of Karen B. Selvin (Doc. 16-8)). NYC DOB stated that, under the regulation, any special inspection form filed without a valid SIA license was considered a false filing and asked Velasquez for a response within ten days. 1 R.C.N.Y. § 101-06(c)(10)(vi); (Doc. 16-8). On March 9, 2019, Velasquez responded that he "would never purposeful submit a false document" to NYC DOB. (Ex. I to Decl. of Karen B. Selvin (Doc. 16-9)). On March 13, 2019, NYC DOB issued a "final

2

determination" denying Velasquez's SIA application and finding that his undisputed filing of special inspection forms without a valid SIA license "directly impact[ed] the Department's view of [his] character and fitness and call[ed] into question [his] ability to abide by the Department's code and rules."  (Compl. ¶ 16); (Ex. A to Compl. (Doc. 4)).  As a result of NYC DOB's denial of his SIA license application, Velasquez is precluded from filing special inspection forms and has been prevented "from earning a living in New York City as an engineer."  (Compl. ¶ 20).

Additionally, on February 8, 2019, NYC DOB initiated an administrative proceeding against Velasquez by filing a petition, related to the 42 filings made while Velasquez lacked a valid SIA license. (Ex. G to Decl. of Karen B. Selvin (Doc. 16-7)).  On February 5, 2020, Administrative Law Judge Noel R. Garcia of the New York City Office of Administrative Trials and Hearings ("OATH") issued a Report and Recommendation that concluded "that [NYC] DOB proved the charge and recommend[ed] a two-year suspension of respondent's self-certification privileges."  (Ex. A to Decl. of Jose Velasquez at 1 (Doc. 19-1)).  On February 13, 2020, Commissioner La Rocca issued a final determination which accepted ALJ Garcia's finding of facts but modified his penalty recommendation.  (Ex. B to Decl. of Jose Velasquez at 2 (Doc. 19-2)).  As Velasquez did not possess self-certification privileges, Commissioner La Rocca instead suspended Velasquez's full filing privileges for one year, disqualified him from conducting special inspections, and excluded him from certain other programs.  (Doc. 19-2 at 3).

RULE 12(B)(6) LEGAL STANDARD

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth.  Id.  Instead, the Court must examine the well-pleaded factual allegations,

which are accepted as true, and "determine whether they plausibly give rise to an entitlement to relief." Id. at 678–79.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

"[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).  A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule." Id.  A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (first alteration in original) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION

Velasquez alleges that defendants discriminated against him on account of his race in the administration of the SIA licensing renewal requirements, the non-renewal of his license, and the disciplinary action against him for conducting inspections without a valid license.  He brings a claim directly under the Equal Protection Clause of Fourteenth Amendment as well as Equal Protection claims under sections 1981 and 1983.  (Compl. ¶¶ 38–53, 62–69); 42 U.S.C. §§ 1981, 1983.  He also alleges violations of the New York State Human Rights Law and the New York City Human Rights Law.  (Compl. ¶¶ 54–61).  Defendants move to dismiss Velasquez's

claims under Rule 12(b)(6). On the motion to dismiss, the parties have submitted various exhibits. The exhibits cited herein are either documents incorporated into the Complaint or documents upon which Velasquez relied in bringing suit. As such, these exhibits may properly be considered on a motion to dismiss without converting it to a summary judgment. Stratte-McClure, 776 F.3d at 100.

I. Velasquez's Equal Protection Clause Claims Are Dismissed.

Velasquez alleges that defendants have discriminated against him in violation of the Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). To plead discrimination in violation of the Equal Protection Clause, a plaintiff must "point to a law or policy that expressly classifies persons on the basis of race," "identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner," or "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." Brown v. City of Oneonta, New York, 221 F.3d 329, 337 (2d Cir. 2000). Though not a model of clarity, the Complaint appears to allege that SIA licensing regulations were selectively enforced, resulting in disproportionately harsh punishment against black engineers,[1] as well as that SIA licensing regulations adversely effected black engineers and were motivated by racial animus. Because Velasquez fails to plausibly allege facts showing the necessary elements of an Equal Protection Clause claim, his claim will be dismissed.

---

[1] As noted, Velasquez describes himself as "African-Honduran," (Compl. ¶4), and his Complaint principally complains of treatment of "black engineers," (e.g. Compl. ¶ 44), with occasional references to "African American[s]," (Compl. ¶¶ 33–34).

A.    Velasquez's Selective Enforcement Equal Protection Claim.

"To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (quoting LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)).  The first prong of this test "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."  Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000); see also Tasadfoy v. Ruggiero, 365 F. Supp. 2d 542, 552 (S.D.N.Y. 2005) ("To satisfy [the] standard, the actors who plaintiff claims should have been disciplined but were not must have been engaged in conduct comparable to her own.  Also, the allegedly comparable actors must have been 'subject to the same performance evaluation and discipline standards.'" (quoting Graham, 230 F.3d at 40)).

Velasquez argues that defendants' disciplinary actions against him represent the selective enforcement of a neutral regulatory scheme in a racially discriminatory manner in violation of the Equal Protection Clause.  Specifically, Velasquez asserts that, due to his race, he was subjected to harsher discipline for his failure to comply with the licensing requirements of the SIA regulations as compared to similarly situated white engineers.  However, Velasquez fails to plausibly allege facts that support either element of the selective enforcement he purports to allege.

First, Velasquez fails to plead facts showing that any similarly situated white engineers received more lenient treatment for violations of SIA rules.  At issue in this case is defendants' imposition of discipline as a result of Velasquez's filing of special inspection documents over an eighteen month period during which he lacked a valid SIA license.  Attempting

6

to meet the similarly situated comparator requirement, Velasquez identifies four "white engineers who committed intentional misconduct" but allegedly received far more lenient treatment than did Velasquez, "who inadvertently omitted to perform a ministerial task." (Compl. ¶ 21). However, on the face of the Complaint, none of these four white engineers qualify as similarly situated comparators to Velasquez. Two of these engineers, Andrew Weiss and George Guttmann, are alleged to have been disciplined by the "New York State Educational Department Professional Misconduct Enforcement," not by defendants. (Compl. ¶¶ 22–23). Discipline imposed by an unrelated governmental entity—the state of New York—cannot serve as a basis for comparison to determine if defendants—a City agency and its Commissioner—were selectively enforcing SIA regulations. Graham, 230 F.3d at 40 (requiring that "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards" (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999))). For the third white engineer, Irving Kusnitz, the Complaint fails to allege which public body imposed the identified discipline, preventing Kusnitz's use as a comparator. (Compl. ¶ 24). Though the fourth white engineer, Steven Schneider, was disciplined by the NYC DOB, Mr. Schneider was not alleged to have violated the NYC DOB regulations in a manner similar to Velasquez, i.e. performing inspections without a valid SIA license, and so is not a similarly situated comparator to Velasquez. (Compl. ¶¶ 25–28). There is no allegation that Schneider lacked a valid SIA license. Rather, the Complaint alleges that he "failed to properly perform and document inspections on numerous sites" and "failed to report hazardous conditions on at least one occasion." (Compl. ¶ 27). His actions or inactions are alleged to have resulted in the death of a construction worker. (Compl. ¶ 27).

Schneider entered into a "consent order for a 24-month stayed suspension, 24 months' probation, and a $5,000 fine."[2] (Compl. ¶ 28).

The Complaint fails to plead facts showing that the circumstances of Velasquez's discipline by defendants related to SIA licensing rules are fairly comparable to the discipline imposed by defendants on white engineers. Velasquez does not plead that defendants subjected him to differential treatment as compared to white engineers that also failed to comply with SIA licensing rules or that filed documents without a valid SIA license. As such, Velasquez has not alleged facts plausibly supporting the first element of a selective enforcement claim.

Second, assuming Velasquez adequately pled facts demonstrating that he suffered differential treatment as compared to similarly situated white engineers, Velasquez still fails to plead in a non-conclusory fashion that any such differential treatment was due to improper considerations of race. At most, the Complaint merely alleges that black engineers received harsher punishments than white engineers, but still fails to ascribe in a non-conclusory fashion any specific discriminatory intent or animus to defendants' actions. Therefore, Velasquez cannot establish the second element of a selective enforcement claim. Velasquez's Equal Protection Clause claim, based on selective enforcement of SIA licensing regulations, will be dismissed.

B.   Velasquez's Statutory Scheme Equal Protection Claim.

Velasquez alleges that SIA licensing regulations disproportionately harm black engineers in violation of the Equal Protection Clause. (Compl. ¶¶ 34–36). As discussed, such a claim requires Velasquez to plead that the SIA licensing requirement "was motivated by discriminatory animus and its application results in a discriminatory effect." Jana–Rock Constr.,

---

[2] The Complaint alleges that the NYC DOB established the SIA license in 2014, (Compl. ¶ 10), yet the construction site death linked to Schneider is alleged to have occurred in 2011, (Compl. ¶26), before the SIA license existed. Further, the consent order with Schneider was entered on February 11, 2014, (Compl. ¶ 28), which could not have been more than a month and a half after the SIA license was created.

Inc. v. New York State Dep't of Econ. Dev., 438 F.3d 195, 204 (2d Cir. 2006) (quoting Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886)); see also Brown, 221 F.3d at 337. "Plaintiffs challenging such facially neutral laws on equal protection grounds bear the burden of making out 'a prima facie case of discriminatory purpose.'" Pyke v. Cuomo, 567 F.3d 74, 78 (2d Cir. 2009) (quoting Jana–Rock, 438 F.3d at 204).

Velasquez fails to plausibly plead facts showing that that SIA licensing regulations had either a discriminatory purpose or discriminatory effect on black engineers. As discussed above, Velasquez demonstrates only that he suffered disciplinary action under the SIA licensing regime. Velasquez does not plead facts showing either that his punishment was disproportionate in comparison to similarly situated white engineers or that black engineers generally were disproportionately disciplined under the SIA licensing rules as compared to white engineers. The facts alleged in the Complaint show nothing more than that some black engineers were disciplined under SIA regulations. Further, again as discussed above, the Complaint fails to make any non-conclusory allegations of discriminatory animus on the part of defendants in creating or administrating SIA licensing rules. Velasquez fails to plausibly allege an Equal Protection Clause claim based on the alleged discriminatory effects of the facially neutral SIA licensing regulations.

II.   Velasquez's § 1981 and § 1983 Claims Are Dismissed.

Velasquez alleges that defendants' racial discrimination has "deprived [him] of his ability to earn a living," providing him with a remedy under 42 U.S.C. § 1981 and 42 U.S.C. § 1983. (Compl. ¶¶ 62–69). Velasquez fails to plausibly allege such claims, which will therefore be dismissed.

"Section 1981 bars certain racially motivated and purposefully discriminatory acts." Yusuf v. Vassar Coll., 35 F.3d 709, 714 (2d Cir. 1994) (citing General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982)). Velasquez has failed to plausibly and in a non-

9

conclusory manner allege facts showing that defendants' discipline of Velasquez was either racially motivated or purposefully discriminatory. Specifically, the Complaint fails to identify an explicit racially discriminatory purpose for defendants' actions, similarly situated white engineers who were treated more leniently for comparable conduct, or any discriminatory animus motivating the application of facially neutral SIA licensing regulations in a discriminatory manner. As Velasquez fails to plead any racially motivated or purposefully discriminatory actions by defendants, his section 1981 claim will be dismissed.

Section 1983 provides a remedy against a municipality when a policy, regulation, ordinance, or custom results in a violation of the Constitution or federal law. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). However, without an underlying violation of the Constitution or federal law, there can be no claim against a municipality under section 1983. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); see also Los Angeles Cty. v. Humphries, 562 U.S. 29, 39 (2010) (holding that "Monell's 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective"); Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergovernmental Affairs, 393 Fed. App'x 791, 794 (2d Cir. 2010) (summary order) (denying a preliminary injunction, premised on a Monell claim, due to the lack of an underlying constitutional violation). Velasquez maintains that defendants are liable under section 1983 for the racially discriminatory application of discipline relating to SIA licensing regulations. However, as the Court has found no underlying Equal Protection Clause violation here, Velasquez's section 1983 claim will be dismissed. Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

III.     Velasquez's State Law Claims Are Dismissed.

Velasquez alleges defendants' disciplinary actions also constituted unlawful discrimination under the New York State Human Rights Law and the New York City Human Rights Law.  (Compl. ¶¶ 54–61).

A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction."  Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id. (alteration in original) (quoting Cohill, 484 U.S. at 350 n.7).

Here, as the Court has dismissed all of Velasquez's federal claims, the remaining claims are brought only under New York law.  Further, proceedings related to defendants' disciplinary actions against Velasquez are presently ongoing in a New York State Court.  Velasquez v. La Rocca, No. 100368/2020 (N.Y. Sup. Ct. Mar. 10, 2020).  Therefore, principles of judicial economy, fairness, convenience, and comity will be best served by declining to exercise supplemental jurisdiction over Velasquez's state law claims.  Velasquez's claims under the New York State Human Rights Law and the New York City Human Rights Law will be dismissed.

CONCLUSION

Defendants' motion to dismiss is GRANTED.  The Clerk is directed to terminate this motion, (Doc. 15), as well as Velasquez's request for mediation, which is deemed moot, (Doc. 8).  The Clerk is also directed to enter judgment for the defendants dismissing Count One

(Equal Protection claim) and Count Three (section 1981 and 1983 claims) with prejudice and Count Two (State and City Human Rights Laws claims) without prejudice and close this case.

SO ORDERED.

                                                    P. Kevin Castel
                                    United States District Judge

Dated: New York, New York
       May 22, 2020